UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEVEN WILLIAMS,

                           Plaintiff,

                  -against-

THE CITY OF NEW YORK,
JOSE RODRIGUEZ,
NEON CHOWDHURY,
ALEX ALMONTEPICHARDO,
JOSEPH RINALDO,
DANIEL LIBERATORE,
JOSE GOMERA,
MICHAEL MARRONE, and
ANTHONY RIVERA,

                        Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

Dkt. No. 24 Civ. 806

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Plaintiff Steven Williams, appearing by and through his attorneys, Kopke

Christiana & Rastetter LLP, hereby alleges as follows:

## NATURE OF THE CASE

1.      This is a civil rights action brought against the City of New York and

members of the New York City Police Department who violated Plaintiff's rights under the

Constitution of the United States and committed torts actionable under the common laws and

statutes of the State and New York.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 for violations of

Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United

States Constitution, as well as the common laws and statutes of the State of New York.

3.      Jurisdiction is conferred by 28 U.S.C. § 1343, which provides for jurisdiction over all actions brought pursuant to § 1983, and by 28 U.S.C. § 1331, which provides for jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.

4.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all state law claims that are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy.

5.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

6.      Pursuant to New York State General Municipal Law § 50-e, Plaintiff filed a timely Notice of Claim with the New York City Comptroller, and the Comptroller designated said claim as number 2023PI003872.

7.      Plaintiff appeared for a hearing pursuant to New York State General Municipal Law § 50-h on September 8, 2023.

8.      Plaintiff's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

**PARTIES**

9.      Plaintiff STEVEN WILLIAMS ("Plaintiff" or "Mr. Williams") is a citizen of the United States and resident of the Commonwealth of Virginia. At all times relevant to this action, Plaintiff was a resident of the County of Bronx in the City and State of New York.

10.     Defendant CITY OF NEW YORK ("the City") is a municipal corporation, organized and existing under the laws of the State of New York.

11.     The City controls and maintains a police force known as the New York City Police Department ("the NYPD").

12.     At all relevant times, Defendant JOSE RODRIGUEZ (Shield No. 4854, Tax ID No. 940657) ("Rodriguez" or "Defendant Rodriguez") was employed as a police officer for the NYPD and assigned to the 42nd Precinct.

13.     At all relevant times, Rodriguez was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Rodriguez is sued in his individual capacity.

14.     At all relevant times, Defendant NEON CHOWDHURY (Shield No. 19070, Tax ID No. 953408) ("Chowdhury" or "Defendant Chowdhury") was employed as a police officer for the NYPD and assigned to the 42nd Precinct.

15.     At all relevant times, Chowdhury was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Chowdhury is sued in his individual capacity.

16.     At all relevant times, Defendant ALEX ALMONTEPICHARDO (Shield No. 14825, Tax ID No. 968930) ("Almontepichardo" or "Defendant Almontepichardo") was employed as a police officer for the NYPD and assigned to the 42nd Precinct.

17.     At all relevant times, Almontepichardo was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and

within the course and scope of his employment as a police officer for the NYPD. Almontepichardo is sued in his individual capacity.

18. At all relevant times, Defendant JOSEPH RINALDO (Shield No. 15394, Tax ID No. 966304) ("Rinaldo" or "Defendant Rinaldo") was employed as a police officer for the NYPD and assigned to the 42nd Precinct.

19. At all relevant times, Rinaldo was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Rinaldo is sued in his individual capacity.

20. At all relevant times, Defendant DANIEL LIBERATORE (Shield No. 2952, Tax ID No. 954064) ("Liberatore" or "Defendant Liberatore") was employed as a sergeant for the NYPD and assigned to the 42nd Precinct.

21. At all relevant times, Liberatore was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a sergeant for the NYPD. Liberatore is sued in his individual capacity.

22. At all relevant times, Defendant JOSE GOMERA (Tax ID No. 941824) ("Gomera" or "Defendant Gomera") was employed as a lieutenant for the NYPD and assigned to the 42nd Precinct.

23. At all relevant times, Gomera was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the

course and scope of his employment as a lieutenant for the NYPD. Gomera is sued in his individual capacity.

24. At all relevant times, Defendant MICHAEL MARRONE (Shield No. 4425, Tax ID No. 951970) ("Marrone" or "Defendant Marrone") was employed as a sergeant for the NYPD and assigned to the 41st Precinct.

25. At all relevant times, Marrone was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a sergeant for the NYPD. Marrone is sued in his individual capacity.

26. At all relevant times, Defendant ANTHONY RIVERA (Shield No. 9291, Tax ID No. 962057) ("Rivera" or "Defendant Rivera") was employed as a police officer for the NYPD and assigned to the 41st Precinct.

27. At all relevant times, Rivera was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Rivera is sued in his individual capacity.

28. Collectively, Defendants Rodriguez, Chowdhury, Almontepichardo, Rinaldo, Liberatore, Gomera, Marrone, and Rivera are referred to as the "Individual Defendants."

29. At all relevant times, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of NYPD and otherwise performed and engaged in conduct incidental to the

performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

30.     At all relevant times, the Individual Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

31.     Each of the Individual Defendants is entitled to indemnification by the City of New York under New York law for any liability arising from their conduct described herein.

32.     Each of the Individual Defendants is entitled to indemnification by the City of New York pursuant to contract for any liability arising from their conduct described herein.

## Facts Common to All Claims for Relief

33.     On November 6, 2022, Plaintiff lived together with his girlfriend, Lashonda Simmons, in apartment 1B on the first floor of an apartment building located at 866 East 169th Street in the Bronx ("the building" or "the apartment building").

34.     At all relevant times, Plaintiff's neighbor directly above in apartment 2B was a man named Vincent Heyliger ("Heyliger").

35.     At all relevant times, Heyliger lived in 2B with two other men, their three significant others, and several children.

36.     After Heyliger moved into 2B in approximately September or October of 2022, Plaintiff, Lashonda, and other residents of the building made numerous complaints to 311 about excessive amounts of noise coming from 2B at all hours.

37.     This pattern repeated on Sunday, November 6, 2022. Beginning during the early afternoon while Plaintiff was at work, the residents of 2B were stomping, screaming, playing music at an excessive volume, and otherwise being very loud.

38.     The ongoing noise prompted Lashonda, who was home in 1B, to call 311 and request an NYPD response.

39.     When Plaintiff returned from work at approximately 4 or 5 p.m., the excessive noise from the 2B was ongoing, and no NYPD personnel had responded to Lashonda's 311 call.

40.     Out of frustration over the incessant racket, Plaintiff and Lashonda knocked on the walls of their apartment to indicate to everyone in 2B they were being too loud.

41.     Around 7:30 p.m., Plaintiff left the building to go up the hill to a store on Prospect Avenue.

42.     At that time, as well as when Plaintiff returned several minutes later, Heyliger and the two other men that lived in 2B were congregating on the sidewalk in front of the building.

43.     At all relevant times, the apartment building was equipped with various security cameras that depicted, among other things, the front exterior of the building and its interior hallways.

44.     At all relevant times, the live feeds and recordings from these security cameras were accessible to each resident of the building via an app on their phones they could use to individually access and monitor any camera.

45.     Upon Plaintiff's return, Lashonda related that she had been watching the building's front exterior camera and noticed one of the men from 2B attempting to follow Plaintiff into the building in what she perceived was a threatening manner.

46.     In reviewing other footage from before and after Plaintiff went to the store, Plaintiff and Lashonda observed Heyliger and another man from 2B carrying two long weapon-shaped items concealed in hoodies or t-shirts from 2B to the front of the building, and secreting the weapons near where they were congregating.

47.     Plaintiff and Lashonda could also see on the building's front exterior camera that there was a marked NYPD radio motor patrol car ("RMP") parked directly across the street, at the corner of 169th and Lyman.

48.     Alarmed that Heyliger and his companions were not only acting threatening toward Plaintiff but were also gathering weapons in apparent preparation for carrying out an assault, Lashonda determined to speak with the two NYPD officers in the RMP—Defendants Rodriguez and Chowdhury.

49.     Plaintiff looked on via the building's front exterior camera as Lashonda crossed the street.

50.     When Lashonda reached the RMP and began speaking with Defendants Rodriguez and Chowdhury, Plaintiff observed a female in Heyliger's group point at Lashonda and the RMP.

51.     Apparently in response to this, Heyliger picked up one of the weapons stashed on the street and handed it to a different female, who carried it into the building.

52.     Meanwhile, Lashonda informed Defendants Rodriguez and Chowdhury about the ongoing noise situation with 2B, that she and Plaintiff had knocked on their walls out of frustration, that one of the men from 2B had then acted in a threatening manner toward Plaintiff, and that she and Plaintiff had observed Heyliger and his cohorts accumulating weapons on the street.

53.     Lashonda further explained to Defendants Rodriguez and Chowdhury that based on the facts she related, she perceived that the group intended to assault and do harm to her and Plaintiff.

54.     Defendants Rodriguez and Chowdhury declined to assist, informing Lashonda that the apartment building was outside of their jurisdiction.

55.     Rodriguez and Chowdhury then exited their RMP and watched as Lashonda walked back across the street and tried to reenter the apartment building.

56.     As she did so, one of the men from 2B in front of the building cursed at Lashonda in Spanish, prompting a verbal argument to ensue.

57.     Plaintiff observed this on his phone and rushed outside to defuse the situation and escort Lashonda safely back into the building.

58.     As Plaintiff stood in the doorway providing cover for Lashonda to enter the building, Heyliger and several others from 2B became irate with Plaintiff and started yelling.

59.     Plaintiff attempted to defuse their hostility by pointing at Defendants Rodriguez and Chowdhury standing on the other side of the street.

60.     As this occurred, one of the three men from 2B who had been upstairs returned downstairs and approached Plaintiff from behind in a threatening manner.

61.     Now surrounding Plaintiff on all sides in the doorway, Heyliger and the two other men from 2B began viciously attacking Plaintiff with closed fist punches, in full view of Defendants Rodriguez and Chowdhury.

62.     Plaintiff attempted to escape the assault by fleeing onto the street, but one of Plaintiff's assailants caught hold of his t-shirt, enabling the three men to manhandle Plaintiff and for one of the men to pin Plaintiff against the front gate of the apartment building.

63.     As the three men manhandled and pinned Plaintiff against the gate, one of them hit Plaintiff's head and body with repeated closed fist punches, and Heyliger kneed Plaintiff over and over.

64.     All of this occurred in full view of Defendants Rodriguez and Chowdhury as they crossed the street and approached the scene.

65.     Even as Rodriguez and Chowdhury arrived and physically intervened to stop the assault on Plaintiff, the attackers refused to relent—Heyliger and another man continued hitting Plaintiff with closed fist punches and kneeing him while the third held Plaintiff pinned.

66.     Eventually, Rodriguez and Chowdhury were able to momentarily stop Heyliger and one of the men from assaulting Plaintiff. However, the third man pinning Plaintiff to the gate had to be physically wrenched off by Defendant Rodriguez.

67.     During this lull in the attack, all three men from 2B continued to make threats, taunt Plaintiff, and attempt to assault him, all in the presence of Defendants Rodriguez and Chowdhury.

68.     Fearful that the three men would resume their attack using one of the weapons they had stashed nearby, Plaintiff picked up a small pink knife he spotted on the sidewalk and put it in his pocket.

69.     Despite clearly witnessing an unprovoked criminal attack on Plaintiff by the three men, which corroborated the concerns Lashonda relayed moments earlier, Defendants Rodriguez and Chowdhury falsely accused the group, collectively, of fighting.

70.     Plaintiff truthfully denied he was fighting and explained that, as Lashonda reported was likely, he was being jumped by the three men and was the victim of a group assault.

71.     Shortly thereafter, in full view of Defendants Rodriguez and Chowdhury, one of the men from 2B grabbed a long red aluminum bat and charged at Rodriguez—who was standing in front of Plaintiff—with the bat.

72.      Plaintiff perceived that the man would not be behind Defendant Rodriguez for long, so Plaintiff bolted into the street and up the hill towards the store on Prospect Avenue he had just been to earlier that night.

73.     Still wielding the red aluminum bat, Heyliger and the two men from 2B ran after Plaintiff.

74.     Rather than giving chase, and despite the obvious nature of the ongoing criminal assault Plaintiff was the victim of, Defendant Rodriguez followed the group at a leisurely walking pace, and Defendant Chowdhury observed without making any attempt to follow.

75.      Heyliger and the other men quickly caught up to Plaintiff and grabbed at him as they all ran, trying to pull and trip Plaintiff to the ground.

76.     At this point in time, Plaintiff reasonably believed that Heyliger and the two men were trying to get him on the ground, pummel him, and potentially kill him with the bat one of them was wielding.

77.     With police officers far behind and no other choice but to defend himself against this group assault by three men with a deadly weapon, Plaintiff pulled out the small pink knife he had picked up and stabbed Heyliger in the stomach.

78.     Plaintiff then rushed into the store he had been to earlier and begged the clerk to lock the door, which the clerk did.

79.     Shortly thereafter, Defendant Rodriguez caught up to Heyliger and the two men from 2B as they gave up on continuing to assault Plaintiff.

80.     Rodriguez did not detain any of the men or attempt to secure the deadly weapon still in the group's possession upon encountering them; instead, and notwithstanding the obvious criminal behavior Rodriguez had witnessed them engage in, he told the men to return to the apartment building.

81.     Defendant Rodriguez then positioned himself in front of the store where Plaintiff was taking refuge.

82.     After several additional NYPD officers arrived, Plaintiff—whose t-shirt was completely ripped to shreds and in tatters from the assault—opened the door and explained to Defendant Rodriguez and arriving officers that the three men had just tried to kill him and were armed with deadly weapons, including possibly a large, bladed weapon.

83.     Inexplicably, Defendant Rodriguez responded by once again falsely accusing Plaintiff of participating in a fight.

84.     Plaintiff corrected Rodriguez that he was the victim of potentially deadly—and unprovoked—group assault, not a willing participant in a fight.

85.     Rodriguez reacted to Plaintiff's truthful explanation of the very events Rodriguez himself had witnessed by telling Plaintiff several times to "shut the fuck up" and again falsely insisting to arriving officers that Plaintiff was the blameworthy culprit.

86.     Immediately thereafter, at approximately 7:54 p.m., Plaintiff was forcibly seized and placed in handcuffs.

87.     Officers did not seize or place any of the three assailants from 2B in handcuffs, notwithstanding that Defendants Rodriguez and Chowdhury had witnessed them engage in an unprovoked group assault on Plaintiff with a deadly weapon.

88.     During the ensuing thirty-nine minutes, Defendants Almontepichardo, Rinaldo, Liberatore, Gomera, Marrone, and Rivera, among others, responded to the scene and participated with Defendants Rodriguez and Chowdhury in an investigation of what had happened.

89.     Throughout this time, both Plaintiff and Lashonda repeatedly explained to the Individual Defendants that Plaintiff had been the victim of an unprovoked group assault, not a participant in a fight, and that Plaintiff was simply defending himself as he had every right to do under the circumstances.

90.     Plaintiff and Lashonda also repeatedly explained to the Individual Defendants that footage from the apartment building's security cameras—which Lashonda had access to on her phone and could show them—had captured the entire incident, corroborated

everything she and Plaintiff were saying to the Individual Defendants, and otherwise wholly exculpated Plaintiff of any ostensible wrongdoing.

91.     Upon information and belief, Heyliger and everyone else who resided in apartment 2B likewise had access to the same security camera footage corroborating that Plaintiff was the victim of a group assault with a deadly weapon.

92.     Nevertheless, the Individual Defendants either declined to view any footage from the security cameras, viewed and deliberately ignored what the footage depicted, or deliberately failed to conduct even the most rudimentary investigation that easily and immediately would have revealed Plaintiff to be the victim of a felonious assault, not the perpetrator of one.

93.     In further corroboration of what Plaintiff and Lashonda were explaining to the Individual Defendants, Defendant Rodriguez informed the other Individual Defendants that the three men from 2B, including Heyliger, were chasing Plaintiff with a bat when Plaintiff stabbed Heyliger.

94.     Additionally, consistent with Plaintiff's saying moments before being handcuffed that the men from 2B were trying to attack him with a large, bladed weapon, Defendant Rivera discovered and collected a katana sword from the street in front of the apartment building right where Heyliger and his companions could be seen stashing a weapon on the security camera footage.

95.     Despite lacking probable cause or even a reasonable suspicion to believe that Plaintiff had committed any crimes, and notwithstanding the wealth of evidence available and known to the Individual Defendants corroborating that Plaintiff had been the victim of a

felony group assault and taken reasonable and completely lawful steps to defend himself, at 8:33

p.m., the Individual Defendants determined to formally place Plaintiff under arrest.

96.     No one other than Plaintiff was arrested in connection with the incident.

97.     The ostensible crimes Plaintiff was placed under arrest for related to

Plaintiff's stabbing of Heyliger in self-defense while he and two others assaulted Plaintiff with a

deadly weapon, and an alleged assault on a woman named Lilliam Ocasio Rodriguez.

98.     In arresting Plaintiff, the Individual Defendants recklessly and/or willfully

ignored a wealth of evidence that exculpated Plaintiff and vitiated any arguable probable cause

that could have arisen from the obviously false allegations levied by Heyliger and Lilliam Ocasio

Rodriguez.

99.     For instance, the Individual Defendants either never viewed or wholly

ignored the security camera footage from the apartment building depicting the supposed crimes

Plaintiff was arrested for, which footage definitively showed that Plaintiff did not assault Lilliam

Ocasio Rodriguez, and that Heyliger and two others were assaulting Plaintiff with a deadly

weapon when he stabbed Heyliger in self-defense.

100.    Among other evidence that was available and known to the Individual

Defendants and deliberately ignored in arresting Plaintiff: (a) Plaintiff and Lashonda's truthful

explanations about what had occurred, which were corroborated by all the available credible

evidence; (b) the security camera footage depicting Plaintiff's purported crimes readily available

on the phones of Lashonda and everyone from 2B, and which made clear Plaintiff had not

committed any crimes and was, instead, the victim of an unprovoked group assault; (c) the fact

that three men were attempting to assault Plaintiff with a deadly weapon when Plaintiff stabbed

Heyliger in self-defense; and (d) the discovery and collection of Heyliger's katana sword in front of the apartment building.

101.    Plaintiff was detained as a result of the Individual Defendants' actions at the 41st and 42nd Precincts and Central Booking from November 6, 2022 until November 7, 2022.

102.    On November 7, 2022, the Individual Defendants also initiated a prosecution of Plaintiff without probable cause and using false evidence and statements, in the criminal action designated CR-020076-22BX, which charged Plaintiff with crimes of which he was innocent and of which the Individual Defendants knew Plaintiff to be innocent, including felony assault in the second degree, misdemeanor assault in the third degree, criminal possession of a weapon, and harassment.

103.    The false evidence and statements provided by the Individual Defendants included mischaracterizations and intentional omissions of key material information about the facts and circumstances of Plaintiff's alleged crimes in their documentation regarding the incident and in conversations with the District Attorney.

104.    The Individual Defendants also withheld exculpatory information, including: (a) Plaintiff and Lashonda's truthful explanations about what had occurred, which were corroborated by all the available credible evidence; (b) the security camera footage depicting Plaintiff's purported crimes readily available on the phones of Lashonda and everyone from 2B, and which made clear Plaintiff had not committed any crimes and was, instead, the victim of an unprovoked group assault; (c) the fact that three men were attempting to assault Plaintiff with a

deadly weapon when Plaintiff stabbed Heyliger in self-defense; and (d) the discovery and collection of Heyliger's katana sword in front of the apartment building.

105. On or about December 14, 2022, all criminal charges against Plaintiff were dismissed and the criminal proceeding terminated in Plaintiff's favor.

106. All of the acts and omissions of the Individual Defendants, as described in the foregoing paragraphs, were intentional and malicious in nature.

## The Injuries to Plaintiff

107. This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering and loss of liberty that Plaintiff was forced to endure as a consequence of the decidedly wrongful and negligent actions of the Individual Defendants.

108. The actions of the aforesaid Defendants were wanton and reckless, as well as in blatant disregard of Plaintiff's civil rights, and as such they are liable for punitive damages, as is the City of New York under the doctrine of *respondeat superior*.

109. All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

## Claims for Relief

## First Claim — False Arrest in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)

## (Against the Individual Defendants)

110. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

111.     The Individual Defendants restrained and arrested Plaintiff without justification or probable cause.

112.     The Individual Defendants also searched Plaintiff without probable cause to do so.

113.     By virtue of the aforementioned acts and omissions by the Individual Defendants, Plaintiff was deprived of civil rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable or unlawful searches and seizures, and the Individual Defendants therefore are liable to Plaintiff for damages under 42 U.S.C. § 1983.

114.     As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

115.     As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

**Second Claim — Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)**

**(Against the Individual Defendants)**

116.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

117.     The Individual Defendants, acting individually and in concert with malice and knowing that probable cause did not exist to prosecute Plaintiff for any crimes, intentionally caused Plaintiff to be arrested, charged, and prosecuted for various crimes including felony assault in the second degree, thereby violating Plaintiff's clearly established right, under the

Fourth and Fourteenth Amendments of the United States Constitution, to be free of prosecution absent probable cause.

118.    The Individual Defendants, acting individually and in concert, fabricated evidence and intentionally withheld and misrepresented material exculpatory evidence, all of which resulted in a prosecution without probable cause.

119.    The Individual Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights. No reasonable officer at the time would have believed this conduct was lawful.

120.    The prosecution finally terminated in Plaintiff's favor on December 14, 2022, when all charges against Plaintiff related to the above-mentioned incident were dismissed.

121.    The acts and omissions of the Individual Defendants, as described in the foregoing paragraphs, were the direct and proximate cause of Plaintiff's injuries because the Individual Defendants knew, or should have known, that their conduct would result in Plaintiff's wrongful arrest, incarceration, and prosecution.

122.    The actions of the Individual Defendants were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

123.    The aforesaid actions of the Individual Defendants constituted a malicious prosecution of Plaintiff in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and entitle Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

**Third Claim — Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial (42 U.S.C. § 1983)**

**(Against the Individual Defendants)**

124.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

125.     The Individual Defendants, acting within the scope of their employment with the NYPD, deprived Plaintiff of his clearly established constitutional right to due process of law and to a fair trial by providing false evidence and statements to the prosecution, defense counsel, and the court, including by falsely mischaracterizing and intentionally omitting key material information about the facts and circumstances of Plaintiff's alleged crimes in their documentation regarding the incident and in conversations with the District Attorney, which evidence was material to and likely to influence a jury's or criminal court judge's decision on Plaintiff's guilt or innocence with respect to crimes he was charged, including felony assault in the second degree.

126.     The Individual Defendants also deprived Plaintiff of his clearly established constitutional right to due process of law and to a fair trial and caused him prejudice by withholding material exculpatory evidence from the defense and/or prosecutors, including but not limited to: (a) Plaintiff and Lashonda's truthful explanations about what had occurred, which were corroborated by all the available credible evidence; (b) the security camera footage depicting Plaintiff's purported crimes readily available on the phones of Lashonda and everyone from 2B, and which made clear Plaintiff had not committed any crimes and was, instead, the victim of an unprovoked group assault; (c) the fact that three men were attempting to assault Plaintiff with a

deadly weapon when Plaintiff stabbed Heyliger in self-defense; and (d) the discovery and collection of Heyliger's katana sword in front of the apartment building.`

127.     The Individual Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights. No reasonable officer at the time would have believed this conduct was lawful.

128.     The acts and omissions of the Individual Defendants, as described in the foregoing paragraphs, were the direct and proximate cause of Plaintiff's injuries because these Defendants knew, or should have known, that their conduct would result in Plaintiff's wrongful incarceration and prosecution.

129.     The actions of the Individual Defendants were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

130.     The aforesaid actions of the Individual Defendants constituted a deprivation of Plaintiff's liberty without due process of law and a denial of Plaintiff's right to a fair trial in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as Plaintiff's rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and entitle Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Fourth Claim – Failure to Intervene (42 U.S.C. § 1983)

## (Against the Individual Defendants)

131. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

132. The Individual Defendants failed to intervene to prevent, end, or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so, thereby displaying deliberate indifference to Plaintiff's clearly established rights, including Plaintiff's rights to due process and to be free from unreasonable and unlawful searches and seizures.

133. By virtue of the aforementioned acts and omissions by the Individual Defendants, Plaintiff was deprived of civil rights guaranteed under the Constitution of the United States, and the aforesaid Defendants are therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

134. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

135. As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

## Fifth Claim — False Arrest and False Imprisonment in Violation of New York Law

## (Against All Defendants)

136. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

137. Plaintiff was arrested, handcuffed, and detained in the absence of probable cause by the Individual Defendants.

138. At all times mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

139. Plaintiff was conscious of the confinement and did not consent to such confinement.

140. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

141. As a result of the above tortious conduct, the Individual Defendants are liable for punitive damages.

142. The City of New York is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

## Sixth Claim — Malicious Prosecution in Violation of New York Law

### (Against All Defendants)

143. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

144. The Individual Defendants initiated a prosecution against Plaintiff without probable cause and with malice, and that prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff.

145. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

146.     As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

147.     The City of New York is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

## Seventh Claim — Violations of N.Y.C. Administrative Code §§ 8-801 to 8-807

### (Against All Defendants)

148.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

149.     Plaintiff's right to be free from unreasonable searches and seizures was violated by the conduct of the Individual Defendants.

150.     The City of New York is liable as the employer of the aforesaid Defendants under New York City Administrative Code § 8-803(b).

151.     Qualified immunity is no defense to this claim.

152.     As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

153.     As a result of the above unconstitutional conduct, the Individual Defendants are liable for punitive damages.

## Eighth Claim — Assault and Battery in Violation of New York Law

### (Against All Defendants)

154.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

155.     The aforementioned actions of the Individual Defendants constituted an assault and battery of Plaintiff under New York law for which said Defendants are answerable in damages and for which the City is vicariously liable for under the doctrine of *respondeat superior*.

## Ninth Claim — Negligent Hiring, Screening, Training, Supervision, and Retention

## (Against Defendant City of New York)

156.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

157.     The aforesaid actions of the Individual Defendants resulted from the negligence of Defendant City in the hiring, screening training, supervision, and retention of the aforementioned employees.

158.     Although the City and its agents and employees were aware prior to the events giving rise to the claims alleged herein that the Individual Defendants were unfit and unqualified to function as police officers because, among other things, these officers had engaged in similar malfeasance and conduct in the past, the City nevertheless retained the Individual Defendants and failed to properly train or supervise these Defendants, resulting in injury and damages to Plaintiff.

**WHEREFORE**, Plaintiff Steven Williams demands:

A.      A trial by jury;

B.      A judgment ordering all Defendants to pay compensatory damages in an amount to be determined at trial;

C.      A judgment ordering punitive damages against the Individual Defendants, in an amount sufficient to deter such conduct in the future;

D.      Attorneys' fees, costs, and interest, pursuant to 42 U.S.C. §§ 1983 and 1988; and

E.      Such other and further relief as this Court deems appropriate.

Dated: Brooklyn, New York
       February 2, 2024

Respectfully submitted,
KOPKE CHRISTIANA & RASTETTER LLP

By:    /s/Clyde Rastetter
        Clyde Rastetter
        199 Cook Street, Suite 308
        Brooklyn, NY 11206
        t/f: (917) 451-9525
        e: clyde@kcrllp.com
        *Attorneys for Plaintiff*